IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

2005 MAY 23  A  9: 3b

JOHN HENRY TOWNSEND,

    Petitioner,

vs

UNITED STATES OF AMERICA,

    Respondent.

    DEBRA P. HACKETT, CLK
    U.S. DISTRICT COURT
    MIDDLE DISTRICT ALA

CASE NO. ~~97-131-N~~

2:05cv477·D

_____/

MEMORANDUM IN SUPPORT
OF MOTION TO AMEND SECTION 2255 PETITION

    Petitioner, John H. Townsend, by and through himself, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, respectfully requests that this Court permits him to Amend his previously filed Petition for Writ of habeas Corpus pursuant to 28 U.S.C. § 2255. Rule 15(c) of the Federal Rules of Civil Procedure permit a Petitioner to amend a Section 2255 petition where the "claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." As the Eleventh Circuit recognized in Dean v. United States, 278 F.3d 1218, 1222 (11th Cir. 2002), "The key consideration is that the amended claim arises from the same conduct and occurrences upon which the original claim was based." Although this Court previously ordered the Petition

dismissed, there is no indication that the dismissal was with prejudice and under the decision of the Fifth Circuit in Whitaker v. City of Houston, 963 F.2d 831, 835 (5th Cir. 1992), this Court has the authority to permit Petitioner to Amend his Petition. Under the law of this circuit, "There must be a substantial reason" for a court to deny a motion to amend. Laurie v. Alabama Court of Criminal Appeals, 256 F.3d 1266 (11th Cir. 2001).

Here there is no question that the proposed amendments arises from the same conduct as the original claim. Counsel's failure to advise the defendant of the necessity of testifying in order to preserve the Court's error at trial is the same conduct that leads to a claim that trial counsel committed constitutional error in failing to advise the defendant of his right to testify in his defense. Second, the affidavits attached are additional evidence of claims raised in Petitioner's original petition. Indeed, they directly address questions raised by this Court, which were, what testimony and by whom, demonstrates that the defendant received ineffective assistance of counsel. Under the decision of the Eleventh Circuit Court of Appeals in Dean, amendment of the Petition is required pursuant to the rule.

## MEMORANDUM OF LAW

Petitioner's motion to amend the petition is filed pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. Based upon the one-year limitation period contained in 28 U.S.C. § 2255, Petitioner's claims would be untimely unless they relate back under Rule 15(c) to the original motion to vacate. In order to relate back, the claims asserted in the amended motion must have "[arisen] out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). In other words, "the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in both 'time and type.'" Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000).

The movant in Davenport, in his original motion to vacate, raised three ineffective assistance of counsel claims. Davenport, 217 F.3d at 1346. In his motion to amend, the movant attempted to add three new ineffective assistance of counsel claims. Id. The Eleventh Circuit found that although the movant had raised ineffective assistance of counsel claims in the original § 2255 motion, the amended claims of ineffective assistance of counsel arose from separate conduct and occurrences in both time and type. Id. Based thereon, the Eleventh Circuit concluded that the new claims did not relate back to the date of the movant's timely filed § 2255 motion. Id.

In the Section 2255 Petition previously filed with this
Court, the Petitioner argued that the received ineffective
assistance of counsel on the grounds that trial counsel had
failed to preserve his objection to the trial court's ruling
on his motion to exclude evidence of the defendant's violation
of the conditions of pretrial release, that is Petitioner's
admission that he used drugs while on bond.  In order to
preserve that objection, the defendant would have had to take
the witness stand and subject to cross-examination.

The Magistrate held that trial counsel's decision not to
put the defendant on the witness stand was a reasonable trial
strategy given the likely impeachment, although there was no
evidence before the Court regarding the circumstances leading
to trial counsel's decision not to call the defendant to the
stand, the Magistrate ruled that "Townsend made a strategic
decision not to testify in light of the trial court's advisory
ruling that the evidence could be admitted during
cross-examination."  Recommendation of the Magistrate, p. 5.
This Court upheld the Magistrate's ruling and the Eleventh
Circuit denied a certificate of appealability.

Related to that question, but not raised in the Petition,
was whether Petitioner's counsel had advised the defendant of
his right not to testify.  Failure to advise the defendant of
the right to testify is constitutional error.  United States
v. Gallego, 174 F.3d 1196 (11th Cir. 1999).  As the Eleventh

4

observed in Gallego, "where defense counsel never informed the
defendant of his right to testify and that the final decision
belongs to the defendant alone, defense counsel 'has not acted
'within the range of competence demanded of attorney's in
criminal cases,' and the defendant clearly has not received
reasonably effective assistance of counsel.'" citing United
States v. Teague, 953 F.2d 1525, 1534 (11th Cir.)(en banc)
cert. denied, 506 U.S. 842 (1992).

Second, in his original petition, Petitioner alleged the
trial counsel, "fail[ed] to interview possible defense witnesses."
Defendant's Memorandum in Support of § 2255 Motion to Vacate,
Set Aside or Correct Sentence, page 9.  In response this Court
ruled that, "the Defendant neither specifies who he believes
should have been interviewed nor does he state what information
they would have provided that was favorable to his defense."
Recommendation of Magistrate Judge, September 24, 2001, page 8.
Attached to the instant motion are affidavits by Petitioner's
former secretary, Brenda D. Burke, who contradicts the testimony
of the Government's star witness Cedric Grant; and the affidavit
of Petitioner stating the identities of the witnesses he asked
his lawyer to interview.

As this Court will recall, the only witness to the
Defendant's alleged unlawful conduct was confidential informant
Cedric Grant.  Cedric Grant's testimony that he met with
Petitioner in Petitioner's office along with three others in

5

order to conduct a narcotics transaction is refuted by Ms. Burke. Given the paucity of evidence against the Defendant, there is a reasonable probability that Petitioner would have been found not guilty by the jury had Ms. Burke testified.

## STANDARD OF REVIEW

Congress enacted § 2255, authorizing the filing of motions to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. United States v. Jordan, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." Hill v. United States, 368 U.S. 424, 426-27 (1962); see generally United States v. Hayman, 342 U.S. 205 (1952).

## EVIDENCE PRESENTED AT TRIAL

On April 30, 1996, a confidential informant by the name of Cedric Grant advised detectives with the Montgomery Police Department and agents of the Drug Enforcement Administration that he could purchase cocaine from Petitioner. According to

Grant, he had provided drugs to Petitioner for four years.
(T.T. page 58). Grant thereafter placed a phone call to
Townsend was invited to Townsend's place of business, Townsend's
Garage. (T.T. page 19-20). Grant drove to the business to
meet with Townsend. He was followed by the detectives. When
he returned, Grant said that Townsend was willing to sell him
not less than 1/4 of a kilogram. Two hours later Grant got in
touch with the detectives and said that Townsend had paged him.
(T.T. page 21, 59). Thereafter, Grant was supplied with money
to make the purchase. (T.T. page 22).

The detectives then followed Grant to the garage but after
Grant turned into the business they were not able to maintain
surveillance. Although Grant was wired, the recordings made
of his conversations were unintelligible. (T.T. page 24, 127).

Grant was out of the detectives' sight for twenty to thirty
minutes. During that time, two other vehicles drove up to the
garage. A gray Toyota pickup truck and a black Monte Carlo
with Florida tags. A short time later both vehicles left and
so did Grant. (T.T. page 25). When he returned to the
detectives, he had cocaine in his possession. (T.T. page 28).
Grant claimed that he gave the money to Townsend who thereafter
gave the money to the person in the pickup truck. Townsend
thereafter gave Grant an A/C filter box containing the cocaine.
(T.T. page 45, 61).

One year later, Detective Simons called Townsend and asked
Townsend to meet with him. Townsend did. Counsel at trial

7

mention, "what fool, who has committed a crime would take himself to the law?" Simons advised Townsend of his rights and Townsend allegedly made an inculpatory statement that was later introduced at trial. (T.T. page 28). On cross-examination, Detective Conway admitted that the various recordings they attempted to make were unintelligible and thus did not corroborate the informant's statement. (T.T. page 30-32). Conway further admitted that they did not obtain a written waiver of Petitioner's rights although it is better procedure to obtain such waivers in writing (T.T. page 34). Conway further admitted that they did not even attempt to obtain a recording of Petitioner's confession although they had attempted to record all of the informant's conversation with Petitioner. (T.T. page 36).

In the affidavit in support of the criminal complaint, Agent Conway swore that he observed Petitioner distribute 50 grams of crack cocaine to the informant. At trial, he admitted that he made no such observation. (T.T. page 39-40). In other words he lied in the criminal complaint.

After the jury began its deliberations, the jury sent a note to the court asking the court to be instructed on the meaning of "distribution." At that time the Government asked the court to also instruct the jury on aiding and abetting. (T.T. page 163) The court granted this request over defense counsel's objection. (T.T. 163). Thereafter the jury returned its verdict of guilty.

8

## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

The standard for evaluating ineffective assistance of counsel claims was set forth in Strickland v. Washington, 466 U.S. 668 (1984). The analysis is two-pronged, and the court may "dispose of the ineffective claim on either of its two grounds." Atkins v. Singletary, 965 F.2d 952, 959 (11th Cir. 1992); See Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). Petitioner must first show that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The court must be "highly deferential," and must "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Furthermore, [s]trategic decisions will amount to ineffective assistance only if so patently unreasonable that no competent attorney would have chosen them." Kelly v. United States, 820 F.2d 1173, 1176 (11th Cir. 1987).

To meet the second prong, Petitioner must also demonstrate that counsel's unreasonable acts or omissions prejudiced him. See Strickland, 466 U.S. at 694. That is, Petitioner "must show that there is a reasonably probability that, but for the counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable

9

probability is a probability sufficient to undermine confidence in the outcome."  Id.

With these standards in mind, this Court should address Petitioner's amended claim that trial counsel provided constitutionally ineffective assistance because he failed to fully advise Petitioner of the right to testify and refusing to allow Petitioner to testify, failure to interview and call witnesses.

### FAILURE TO FULLY ADVISE PETITIONER OF THE RIGHT TO TESTIFY AND REFUSING TO ALLOW PETITIONER TO TESTIFY.

"[A] criminal defendant has a <u>fundamental</u> constitutional right to testify in his or her own behalf at trial.  This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel."  <u>Teague</u>, 953 F.2d at 1532. Counsel's performance is deemed deficient if counsel refused to accept the defendant's decision to testify and would not call him to the stand.  <u>United States v. Camacho</u>, 40 F.3d 349, 355 (11th Cir. 1994); <u>Nichols v. Bulter</u>, 953 F.2d 1550, 1553 (11th Cir. 1992); <u>Teague</u>, 953 F.2d at 1534.  Under <u>Teague</u>, "counsel must advise the defendant (1) of his right to testify or not testify; (2) of the strategic implications of each choice; and (3) that it is ultimately for the defendant himself to decide whether to testify."  <u>Teague</u>, 953 at 1533. Absent such advice, the defendant cannot effectively waive his right to testify.  Id.; <u>McGriff v. Dept. of Corr.</u>, 338

10

F.3d 1231, 1237 (11th Cir. 2003).  The burden of persuasion is on Petitioner to prove, by a preponderance of competent evidence, that counsel's performance was deficient, considering all circumstances.  <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000).

Petitioner claim under oath, that he was never advised that he had the right to testify.  This allegation is uncontradicted by credible evidence to the contrary.  Specifically, there is no evidence of any advice to him of his right to testify (or not to testify), or that the ultimate decision whether to testify was his own.  Furthermore, this Court had the opportunity to observe Petitioner while he testified and no basis appeared upon which his testimony could be disregarded in its entirety on this point.  More importantly, Mr. Teague could not testify that he ever advised Petitioner of his right to testify; nor did mention anything about this in his affidavit.  Therefore, on this record, this Court will find no substantial evidence to contradict Petitioner's allegation, and the failure to advise him of his rights under <u>Teague</u> constitutes deficient performance.  See <u>Teague</u>, 953 F.2d at 1534 ("Alternatively, if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, defense counsel's performance would be deemed deficient.");  <u>Gallego</u>, 174 F.3d at 1197 (11th Cir. 1999)("[W]here defense counsel never informed the defendant of his right to testify and that the final decision

11

belongs to the defendant alone, defense counsel has not acted 'within the range of competence demanded of attorney's in criminal cases,' and the defendant clearly has not received reasonably effective assistance of counsel.")(Citations omitted).  According, Petitioner has met the first prong of Strickland, in that counsel's performance was deficient.


## PETITIONER WAS PREJUDICED

"The testimony of a criminal defendant at his own trial is unique and inherently significant." Nichols, 953 F.2d at 1553. "When the defendant testifies, the jury is given the opportunity to observe his demeanor and to judge his credibility firsthand." Id. Moreover, "the most important witness for the defense in many criminal cases is the defendant himself." Rock v. Arkansas, 483 U.S. 44, 52 (1987). Further, "[w]here the very point of a trial is to determine whether an individual was involved in criminal activity, the testimony of the individual himself must be considered of prime importance." United States v. Walker, 772 F.2d 1172, 1179 (5th Cir. 1985). "The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." Green v. United States, 365 U.S. 301, 304 (1961).

In Nichols, supra, the case against the defendant was very close. The only evidence linking the defendant to the robbery for which he was convicted was the eyewitness identification of him by a store employee who had a glimpse of him "for only

a second." <u>Nichols</u>, 953 F.2d at 1551, 1554. Another witness
testified that he and another man -- not the defendant -- actually
committed the robbery. Id. at 1551. Had the defendant testified,
the jury would have been able to weigh his credibility against
the store employee's perception, and his testimony would have
been supported by the defense witness' exculpatory testimony.
Id. at 1554. Thus, the Eleventh Circuit found that the defendant
had demonstrated prejudice from counsel's failure to allow him
to testify based on the fact that there was a scant amount of
evidence against the defendant and that he was not able to
present a defense. Id. See also <u>Rodriguez v. United States</u>,
286 F.3d 972, 985 (7th Cir. 2002) ("In [Nichols] the court
found that the lack of testimony by the defendant was prejudicial
due to the scant amount of evidence presented by the prosecution
and the lack of a defense presented by the defendant's counsel."),
cert. denied, 537 U.S. 938 (2002).

   Similarly, in this case, the evidence that Petitioner
distributed cocaine and/or aided and abetted the other, was
not overwhelming. The evidence regarding Petitioner's
involvement in a drug transaction essentially consisted of the
testimony of Cedric Grant, a know convicted drug dealer, who
admitted he was testifying to help himself. He had entered
into an agreement with the Government that the Government
would recommend a sentence reduction if he testified against
Petitioner.

Had Petitioner testified, he could have presented his version of the event of April 30, 1996, and the jury would have been able to weigh his credibility against that of Cedric Grant. Petitioner could have explained, and professed his lack of knowledge of, and involvement in, the drug dealing, and what he saw happen at his place of business on the day of April 30, 1996, when Cedric Grant came around with others assisting him in the drug transaction. In short, the jury would have been able to hear Petitioner explain to them himself why he was not guilty. As in Nichols, under these circumstances, there is at least a reasonable probability that, but for counsel's failure to advise him of his right to testify, and Petitioner's failure therefore to insist upon it, the result in this case would have been different. See Strickland, 466 U.S. at 694. Therefore, Petitioner was prejudiced by counsel's deficient performance. Accordingly, this Court should find that Petitioner received constitutionally ineffective assistance of counsel. The appropriate remedy is to grant Petitioner a new trial. See Lambix v. Singletary, 72 F.3d 1500, 1508 (11th Cir. 1996); United States v. Scott, 909 F.2d 488, 494 (11th Cir. 1990).

## TRIAL COUNSEL'S FAILURE TO INTERVIEW AND CALL WITNESSES WAS DEFICIENT AND PREJUDICIAL.

Petitioner's motion and supporting evidence certainly puts this case in a very different light than the one it was in at

14

trial.  The affidavits in support of Petitioner's amended motion present a reasonably probability that trial counsel's performance was deficient and that his failure to interview the exculpatory witnesses or call them to testify prejudiced Petitioner's defense.  Although it is not necessary that defense counsel "track down every lead," counsel does have a duty to contact potential witnesses unless counsel "can make a rational decision that investigation is unnecessary."  Montgomery v. Petersen, 846 F.2d 407, 413 (7th Cir.1988).  Furthermore, counsel "has a duty to make reasonable investigation or to make a reasonable decision that make particular investigations unnecessary."  Id. at 412 (citing Strickland v. Washington, 466 U.S. at 690-91)(emphasis in Montgomery).  Prior to this stage in Petitioner's case, this Court had no basis to determine whether or not counsel made a rational decision.  Without any evidence showing counsel's failure to interview Petitioner's witnesses was based on a reasonable professional judgment, counsel's failure can only be presumed to be unreasonable.  Strickland, 466 U.S. at 690-91.

## PREJUDICE

There is also ample evidence of prejudice.  The importance of the witnesses who were not called, and the effect they would have had at trial, was unmistakable.  This Court's conclusion that Petitioner failed to prove prejudice was flawed in at least two respects.  First, the Court overlooked Petitioner's

15

argument that the uncalled witnesses would have refuted the testimony of the Government's chief witness, Cedric Grant, who claim Petitioner was involved in a drug transaction. Where the government's case consists chiefly or solely upon the word of an accomplice, courts have recognized the "great importance to the defendant of evidence of direct contradiction or material corroboration or material corroboration from other sources." Montgomery, 846 F.2d at 413-14.  That same principle applies here: Cedric Grant's testimony would not have held up to the exculpatory testimony of Brenda D. Burke and Mark Woodward.  See Montgomery, 846 F.2d at 414 ("independent corroboration [of the defense] by a neutral, disinterested witness would perforce be extremely significant").

Second, this Court left unanswered the material question of whether there was a reasonable probability the witnesses would have changed the outcome of the trial. Consider that the Government was required to prove that Petitioner engaged in a conspiracy with the other alleged conspirator listed in Grant's statement.  The only person who Petitioner had dealt with, based on the Government's evidence, was Mark Woodward, as the Government made clear at trial. (T.T. See Attached affidavit Petitioner sent to Mark Woodward.  It is very difficult for Petitioner to locate and obtain an [a]ffidavit from a willing witness that can set the record straight on Petitioner's knowledge and participation in the alleged drug transaction of April 30, 1996.  See, United

16

<u>States, ex rel. Cross v. Derobertis</u>, 811 F.2d 1008, 1016 (7th
Cir. 1987)(Acknowledging the difficulty incarcerated petitioner
have fulfilling the burden to produce sufficiently precise
evidence of what uncalled witnesses would have testified).
Petitioner being incarcerated in Yazoo City, Mississippi has
obtained an affidavit from one of the persons [i.e. the
potential witnesses] (See Attached, "Exhibit of Brenda Burke),
but to date, has been unable to contact Mark Woodward from
prison.  But Mark Woodward and Brenda D. Burke themselves
were both willing to testify that they were unaware of
Petitioner engaging in drug activity, not only on April 30,
1996, but ever.   Moreover, Woodward and Burke would have
been credible witnesses at the time Petitioner's trial,
both had been convicted and out of jail and neither had
anything to gain by testifying on Petitioner's behalf.
Woodward's testimony is especially powerful because he
is the one Grant said had the drugs brought to Townsend's
Garage and who Townsend gave the money too.  Unfortunately,
by ignoring Petitioner's request to speak to his witnesses
and call them at trial, in addition to the detectives
alleging Petitioner made an inculpatory statement (directly
the opposite of what the witnesses would have testified),
counsel removed from Petitioner's defense arsenal the most
powerful weapon he would had had at trial.  <u>Montgomery</u> 846
F.2d at 412 (citing <u>Strickland</u> at 691)("information supplied
by the defendant is a prime source of the factual bedrock

upon which counsel must rely in making strategic choices").

Petitioner's amended motion, therefore, is not the kind that can be dismissed or denied out of hand. An "attorney who fails even to interview a readily available witness whose noncumulative testimony may potentially aid the defense should not be allowed automatically to defend his omission simply by raising the shield of 'trial strategy and tactics.'" Wiggins v. Smith, 539 U.S. ____, 156 L.Ed.2d 471, 123 S.Ct. ____(2003); Anderson v. Johnson, 338 F.3d 382 (5th Cir. 2003) (trial counsel's failure to interview eyewitness rose to the level of a constitutionally deficient performance). The affidavits of Petitioner's witnesses raise the reasonably probability that the result of the trial would have been different if they had been called. Fuller v. Attorney General of State of Alabama, 36 F.Supp.2d 1323 (N.D. of Ala. 1999))trial counsel's failure to at least interview corroborating witness was deficient performance and failure to interview or call witness was prejudicial). Prejudice, within the meaning of Strickland, has certainly been proven, and certainly to the degree that an evidentiary hearing is required. "[U]nder Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), a federal evidentiary hearing is required if a habeas petitioner alleges facts which if proved, would entitle him to relief —— for reasons beyond the control of the petitioner —— never considered the claim in a full and fair hearing."

18

**DATED:** This _19_ day of May, 2005.

Respectfully Submitted,

John Townsend
Reg. No. 10000-002
P.O. Box 5000
Yazoo City, MS 39194

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that I have served a copy of the foregoing Amendment to my § 2255 to:

The Office of the U.S. Attorney
Middle District of Alabama
P.O. Box 197
Montgomery, AL 36101

on this _19_ day of May, 2005.

John Townsend

19